## STATE v. GOSS.

No. 5055.   Decided May 3, 1932.   [11 P. (2d) 340.]

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson,* Deputy Atty. Gen., for the State.

*Parley P. Jenson,* of Salt Lake City, for respondent.

FOLLAND, J.

This is an action by the state of Utah against the defendant, who is charged with committing "the crime of violating rules and regulations adopted by the Utah State Board of Health affecting sale of sodas, soft drinks and other beverages, as follows, to wit:

"That the said J. F. Goss, at the time and place aforesaid, then and there being the owner and operator of a root beer

stand known as the A. & W. Root Beer located at 161 South Main Street, Salt Lake City, Salt Lake County, State of Utah, did then and there wilfully and unlawfully and knowingly serve root beer in a glass container to L. H. Male, aforesaid, said glass container not being sterilized in accordance with requirements of the Utah State Board of Health issued July 1, 1929: contrary," etc.

The action was commenced in the city court, where a demurrer interposed by defendant to the complaint was sustained. Upon appeal to the district court the demurrer was again sustained, and, the state electing to stand upon its complaint, the cause was dismissed and defendant discharged. The state appeals. The ground of demurrer was "that the facts stated do not constitute a public offense." The only reasons urged in support of the demurrer are that the state board of health had no power or authority to adopt the rules and regulations in question or to enforce them and that in so doing it attempted to exercise a legislative function which may not by the Legislature be delegated to the board of health. The rules and regulations adopted by the Utah state board of health were the following:

"In order that the sale of sodas, soft drinks and other beverages may be conducted under sanitary conditions, the operators of soda fountains, root beer stands, ice cream parlors and other establishments serving beverages are hereby required to dispense such goods only in clean sterile containers. To this end it is ordered that all of the said beverages shall be dispensed in:

"1. Receptacles that have been sterilized before each individual service by live steam, or

"2. Completely immersed in actually boiling water not less than 3 minutes, or in

"3. Individual paper receptacles used for one service only. The said receptacles shall be destroyed immediately after being used to serve a customer.

"These requirements shall take effect July 1, 1929."

It is the contention of the state that the power to adopt the rules and regulations in question is derived from the provisions of Comp. Laws Utah 1917, § 2707, and that such

an authorization is not the delegation of a legislative function. This section is found in Comp. Laws Utah 1917, chap. 1 of title 40 (sections 2705-2713), and is as follows:

"The board shall have the general supervision of the interests of the health of the citizens of the state, and shall especially study its vital statistics. It shall have general supervision of all matters pertaining to quarantine, shall have co-ordinate powers as a board of health with every local board, and shall have authority to make such rules and regulations not contrary to law as may be deemed necessary for the preservation of public health. It shall make sanitary investigations and inquiries respecting the causes of diseases, especially of epidemic diseases, including those of domestic animals, the sanitary conditions and effects of localities, employments, and circumstances of the public health, and it shall gather such information in respect to these matters as it may deem proper for diffusion among the people."

The material part of this section under which the state board of health acted is that the board of health "shall have authority to make such rules and regulations not contrary to law as may be deemed necessary for the preservation of public health." This language is exceedingly broad in its scope, and if taken literally would confer upon the state board of health all the power which the Legislature itself might exercise with respect to public health with the limitation only that the rules and regulations be "not contrary to law."

The legislative power of the state is by the Constitution vested in the Legislature, and, under circumstances therein specified, in the people of the state, and such legislative power may not by the Legislature be delegated to other agencies, except where expressly directed or permitted by the Constitution. ' Where, however, a certain policy has been prescribed by statute, the power to make rules and regulations to carry such policy into effect may be conferred upon or delegated to an administrative agent such as a board or commission. 12 C. J. 847. The general rule with respect to the delegation of such powers has been stated by text-writers and the courts, as follows:

"Boards and commissions now play an important part in the administration of our laws. The great commercial and industrial evolution of the past century, and the many demands upon our legislatures by the increasing complexity of human activities, have made essential the creation of these administrative bodies and the delegation to them of certain powers. Though legislative power cannot be delegated to boards and commissions, the legislature may delegate to them administrative functions in carrying out the purposes of the statute and various governmental powers for the more efficient administration of our laws." 1 Cooley, Constitutional Limitations (8th Ed.) p. 231.

"A legislature in enacting a law complete in itself, designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission within definite valid limits to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. A distinction is drawn between the more important subjects which must be entirely regulated by the legislature itself, and those of less interest in which a general provision may be made and power given to those who are to act on details under such general provisions." 6 R. C. L. 178.

"The legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. This principle of the law is peculiarly applicable to regulations under the police power, since the complex and ever-changing conditions that attend and affect such matters make it impracticable for the legislature to prescribe all necessary rules and regulations.

"Authority to make rules and regulations to carry out an expressed legislative purpose or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power. Such authority is administrative in its nature and its use by administrative officers is essential to the complete exercise of the powers of all the departments." *Bailey* v. *Van Pelt*, 78 Fla. 337, 82 So. 789.

The distinction between what may and may not be delegated was stated in *State* v. *Chicago, Milwaukee & St. P. Ry. Co.*, 38 Minn. 281, 37 N. W. 782, 787, as follows:

"The difference between the power to say what the law shall be, and the power to adopt rules and regulations, or to investigate and determine the facts, in order to carry into effect a law already passed, is apparent. The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and the conferring an authority or discretion to be exercised under and in pursuance of the law."

The language of Mr. Chief Justice Taft in *Wichita R. & L. Co.* v. *Public Utilities Commission*, 260 U. S. 48, 43 S. Ct. 51, 55, 67 L. Ed. 124, is particularly apt:

"In creating such an administrative agency, the Legislature to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function."

These rules apply generally and are applicable to the various commissions which may be created by the Legislature for the purpose of assisting in the conduct of the government. The same rules, however, are applicable to boards of health, with the exception that possibly ■ boards of health have larger powers when coping with emergency situations such as arise in the face of epidemics of contagious diseases. The general rule with respect to the conferring of power on boards of health to make rules and regulations is stated in 12 C. J. 848, § 333:

"It is the function of the Legislature, as a part of its police power, to make laws for the protection of the public health, and this power may not be delegated to an officer or board. The legislature, however, having enacted such laws in general terms, may confer on a board of health the duty of enforcing them, and to that end may give it authority to make reasonable rules and regulations which shall have the effect of law. The board may not itself prescribe a penalty for the violation of its regulations, but it is competent for the legislature to prescribe a penalty for the violation of rules and regulations thereafter made by the board."

A leading case on the subject is that of *Blue* v. *Beach*, 155 Ind. 121, 56 N. E. 89, 93, 50 L. R. A. 64, 80 Am. St. Rep. 195, wherein is discussed the powers which may be

exercised by the board of health and particularly with respect to summary action when faced with emergency. There also the rule is stated with respect to the delegation of power to make rules and regulations in the following language:

"It is true, beyond controversy, that the legislative department of the state, wherein the constitution has lodged all legislative authority, will not be permitted to relieve itself of this power by the delegation thereof. It cannot confer on any body or person the power to determine what the law shall be, as that power is one which only the legislature, under our constitution, is authorized to exercise; but this constitutional inhibition cannot properly be extended so as to prevent the grant of legislative authority to some administrative board or other tribunal to adopt rules, by-laws, or ordinances for its government, or to carry out a particular purpose. It cannot be said that every grant of power to executive or administrative boards or officials, involving the exercise of discretion and judgment, must be considered a delegation of legislative authority. While it is necessary that a law, when it comes from the lawmaking power, should be complete, still there are many matters relating to methods or details which may be by the legislature referred to some designated ministerial officer or body. All of such matters fall within the domain of the right of the legislature to authorize an administrative board or body to adopt ordinances, rules, by-laws, or regulations in aid of the successful execution of some general statutory provision. Cooley, Const. Lim. 114."

We are unable to find anything in the statute defining a policy or creating a law with respect to the subject of utensils used in serving the public with soft drinks. There is nothing which defines legislative policy with respect to this particular subject. The general power to make rules and regulations unlimited except that ▮ they shall not be contrary to law, is coextensive with the state police power as it affects public health. We think it clear that under this general language the state board of health is not empowered to pass rules and regulations having the force of law regulating the conduct of the people of the state with respect to all matters having some relation to the public health. This, indeed, would be the delegation of legislative power if the words of the statute should be so construed. The language must be taken to be limited

to the particular matters and things specified in succeeding sections of the statute wherein duties are imposed upon the state board of health with respect to particular subjects or situations with respect to the public health. That this must be the construction is indicated in *Potts* v. *Breen,* 167 Ill. 67, 47 N. E. 81, 83, 39 L. R. A. 152, 59 Am. St. Rep. 262, wherein was considered a regulation of the state board of health providing that no pupil be admitted to any public school without presenting satisfactory evidence of proper and successful vaccination. This rule had been enacted pursuant to statutory power, similar to that found in our statute, wherein the board was authorized "to make such rules and regulations, and such sanitary investigations, as they may, from time to time deem necessary for the preservation or improvement of public health." In holding that the board of health had no power to make or enforce the order in question, especially in view that no present emergency existed and that no epidemic of small pox was imminent, the court said:

"It is clear that no such power as claimed by the state board of health has been conferred upon it, unless by the broad and general language of the first section of the act creating it. But the general terms there employed must be construed in relation to the more specific duties imposed and powers conferred by the act taken as a whole, and, when thus construed, these general terms are restricted so as to express the true intent and meaning of the legislature.. Take, for example, the first sentence, viz.: 'The state board of health shall have the general supervision of the interests of the health and life of the citizens of the state.' The scope of the language there employed is practically unlimited, and were it not held to be restricted by wellknown legal principles, applicable in the interpretation and construction of statutes, it would appear to confer more power on this board than the legislature itself possessed. Plainly, it was not intended that any general supervisory power over the health and lives of citizens of the state should be exercised by the board otherwise than in conformity to law, and such as should be necessary, within reasonable limitations, in the performance of the administrative duties which were or should be imposed upon the board by statute. It had and could have no legislative power. Its duties were purely ministerial, and the provision of the statute authorizing the board to make such rules

and regulations as it should from time to time deem necessary for the preservation or improvement of the public health cannot be held to confer that broad discretionary power contended for, to prescribe conditions upon which the citizen of the state may exercise rights and privileges guaranteed to him by public law."

In Comp. Laws Utah 1917, title 40 (section 2705 et seq.), the Legislature has enacted laws on definite subjects relative to public health. For instance, in chapter 2 the subject of sanitation of public buildings is dealt with (sections 2714 to 2717) and the state board of health is authorized and empowered to prepare and enforce rules and regulations governing the proper disinfection and sanitation of public buildings, railway coaches and sleeping cars, and to prescribe a sanitary code with respect to hygienic and sanitary conditions in such places, followed by a definite provision that violations of such rules and regulations made pursuant to such authority shall be punished as therein provided. The quarantine of contagious diseases is dealt with in a similar manner (sections 2726 to 2757), and also swimming pools and bathing places (chapter 57, Laws of Utah 1921), and sanitary inspection of offices and equipment of medical practitioners (chapter 58, Laws of Utah 1921). In each of these instances a legislative policy is announced and a law has been enacted, but in order to carry out the policy thus announced and the purposes of the law so enacted authority to make rules and regulations has been delegated to the state board of health, and penalties are provided for failure to obey such rules and regulations when promulgated. Delegation of power such as last indicated will be sustained by the courts. *State* v. *Normand,* 76 N. H. 541, 85 A. 899, 900, Ann. Cas. 1913E, 996. This was a prosecution against the defendant for violating a regulation of the board of health requiring bread intended for sale, before being removed from the baking room, to be wrapped in clean unused paper. It was alleged on behalf of defendant that this regulation was legislation by the board of health beyond the

power of the Legislature to delegate. The Legislature had, however, passed an act providing that "unclean, unhealthful, or unsanitary conditions or practices shall be deemed to exist * * * if food in the process of production, storage, sale, or distribution is unnecessarily exposed to flies, dust, or dirt," etc., and conferred authority upon the board of health to make all necessary rules and regulations for the enforcement of the act and provided penalties for disobedience of such rules and regulations. It was held that the rule adopted by the board of health was not legislation but merely the exercise of the power conferred upon it by the statute as an administrative board; that this was a reasonable and effective method by which the legislative purpose was carried out; and that such a delegation of power was not unlawful. Other case, holding that the making of rules and regulations by boards or commissions will not be sustained unless in conformity with a legislative act which prescribes a policy with respect to a definite subject or to carry out and make effective the purposes of such legislative enactment, are the following: *Los Angeles County* v. *Luscher,* 58 Cal. App. 632, 209 P. 899; *Interstate Commerce Commission* v. *Goodrich Transit Co.,* 224 U. S. 194, 32 S. Ct. 436, 56 L. Ed. 729; *Hurst* v. *Warner,* 102 Mich. 238, 60 N. W. 440, 26 L. R. A. 484, 47 Am. St. Rep. 525; *Territory* v. *Araujo,* 21 Hawaii 56, Ann. Cas. 1915B, 1212.

There is nothing in this case to indicate that the adoption of the rule or regulation in question was made necessary as an emergency measure or because of an epidemic of contagious disease. The preservation of health is, and always has been, of prime importance to the state, and the courts will go to the greatest extent and give widest discretion in reviewing regulations adopted by boards of health in the actual meeting of such emergencies. 80 Ar. St. Rep. 212, note. The same liberal policy will prevail in dealing with persons affected with disease or who are carriers of disease germs. *People ex rel. Barmore* v. *Robertson,* 302 Ill. 422, 134 N. E. 815, 22 A. L. R. 835.

We note that the complaint does not contain a copy of the rules and regulations under which defendant was prosecuted, nor is there an allegation that defendant had notice of the adoption of such rule or regulation. A copy of the rules and regulations do not appear in the record in this case, and we are informed as to what they are merely by a copy which appears in the brief of counsel for the state.

While there are cases holding that courts will judicially notice rules and regulations of state boards (*State* v. *Martin & Lipe*, 134 Ark. 420, 204 S. W. 622), we think the better practice to be that the rule, or at least enough of it to show that the act charged constituted a violation thereof, must be set out in the complaint. *People* v. *Tait*, 261 Ill. 197, 103 N. E. 750. In the case of *State* v. *Swanson Theater Circuit*, 59 Utah 150, 202 P. 544, 19 A. L. R. 539, this court was called upon to construe the law respecting sanitation of public buildings, and while the question of pleading was not before the court for decision, it was noted in the opinion that the complaint contained the rules and regulations relied upon, and also alleged notice to the defendant of the adoption of such rules and regulations.

In the recent case of *Carter* v. *Industrial Commission*, 76 Utah 520, 290 P. 776, we held that this court will not take judicial notice of a rule or regulation adopted or promulgated by the Industrial Commission, and, for stronger reasons, it must be held that in a criminal prosecution the court cannot by judicial notice supply the rule or regulation of the state board of health which it is charged the defendant violated when there is no averment thereof in the complaint. These objections were not made or argued by respondent nor suggested by appellant, but they are of such a character that we cannot allow them to pass unnoticed. In the ordinary case it would be sufficient to affirm the judgment of the trial court for these deficiencies in the complaint alone, but this case is one of considerable public importance involving the exercise of powers by a state board. In view

of this fact, we have deemed it best to express our views on the question of the validity of the rules and regulations attempted to be enforced and to affirm the judgment of the district court on all grounds herein discussed.

The judgment of the district court of Salt Lake county is affirmed.

CHERRY, C. J., concurs.

ELIAS HANSEN, J. (concurring).

In this case the state appeals from a judgment dismissing a complaint wherein the defendant is charged with, on July 19, 1929, "violating rules and regulations adopted by the Utah State Board of Health affecting sale of sodas, soft drinks and other beverages, as follows, to wit:

"That the said J. F. Goss, at the time and place aforesaid, then and there being the owner and operator of a root beer stand known as the A. & W. Root Beer located at 161 South Main Street, Salt Lake City, Salt Lake County, State of Utah, did then and there wilfully and unlawfully and knowingly serve root beer in a glass container to L. H. Male, aforesaid, said glass container not being sterilized in accordance with requirements of the Utah State Board of Health issued July 1, 1929."

In my opinion the record before us on this appeal requires a consideration and determination of the question of the validity or invalidity of the rules and regulations of the state board of health which are relied upon by the state in this action. It may be conceded that if the defendant were here contending that the complaint filed against him was defective in that it does not definitely advise him of the rules and regulations which it is claimed he violated, such contention would be well founded. Defendant, however, does not so contend. His sole claim is that the rules and regulations which it is claimed he violated are a nullity because the board of health was without legislative authority

to adopt the same. The state's contention is to the contrary. The defendant, in his brief, urges that the rules and regulations relied upon by the state are invalid, and the state urges that such rules and regulations are valid. That is the question upon which the parties are divided. That is the question the parties present for consideration and determination. A determination of that question is of controlling importance. If the defendant is successful in maintaining his contention, this prosecution, as well as other prosecutions founded upon the same rules and regulations are at an end. The view is expressed in the opinion written by Mr. Justice FOLLAND and the concurring opinion written by Mr. Justice STRAUP that this court may not take judicial notice of the rules and regulations of the state board of health. I concur in such view, but I do not see how that rule of law relieves us from disposing of the question which divides the parties in this action. The fair import of the language used in the complaint is that on July 19, 1929, the state board of health adopted rules and regulations requiring those who conduct soft drink stands to sterilize the glasses in which beverages are served and that the defendant willfully, unlawfully, and knowingly served to L. H. Male root beer in a glass which was not sterilized in accordance with such rules and regulations. The state sets out at length in its brief the rules and regulations which it is claimed are pleaded in the complaint, and the defendant in his brief contents himself with urging that such rules and regulations are invalid, without making any claim, so far as appears in his brief, that the rules and regulations are not properly pleaded. The existence of rules and regulations of the state board of health may be established by either proof or an admission of their existence. Where, as here, all parties to a litigation agree that a certain fact (such as the rules and regulations of the state board of health) exists, then and in such case the court trying the cause need no further proof of such fact. If the existence of a fact is conceded by the parties litigant, the court may assume its

existence without the aid of the law with respect to judicial notice. I know of no legal reason why a defendant may not, for the purpose of testing the validity of the rules and regulations here relied upon by the state, admit of their existence and thus invoke the jurisdiction of this court to pass upon their validity. The mere fact that the rules and regulations may be defectively pleaded in the complaint does not preclude the defendant from that right.

I concur in the view expressed by Mr. Justice FOLLAND that the state board of health was without legislative authority to pass the rules and regulations here in question.

STRAUP, J. (concuring in the result).

As is noticed, the case went off on a demurrer to the complaint. I think the demurrer was properly sustained, and thus concur in affirming the judgment, but not on the ground stated in the prevailing opinion. I think the complaint does not state the commission of a public offense for the reason that neither by averment nor by reference is the substance or identity of any rule or regulation of the state board of health alleged, nor does the complaint in any particular show what the requirements of the board were which were claimed to have been violated, and for that reason the demurrer I think was properly sustained. It is clear we may not take judicial notice of a rule or regulation which may have been adopted or promulgated by the board. In *Carter* v. *Ind. Commission,* 76 Utah 520, 290 P. 776, we held we could not take judicial notice of rules of procedure which may have been adopted by the industrial commission. That, I think, is also the plain purport of the statute, Comp. Laws of Utah 1917, § 7076, subd. 3, which provides that courts take judicial notice of "Public and private official acts of the legislative, executive, and judicial departments of this state and of the United States." I think that does not include rules or regulations of the state board of health. There is no other provision of the statute which requires

or permits us to take judicial notice of such rules or regulations. In the absence of a statute requiring or permitting courts to take notice of them, the rule is quite general that courts may not do so. 7 Encyc. of Evid. 991; 23 C. J. 137; 1 Jones' Commentaries on Evid. (2d Ed.) 677, 702, 704. While federal courts have taken notice of rules and regulations of various departments of the federal government, such as rules of the Secretary of Agriculture, of the Treasury, and of the Interior, etc., and which were promulgated by acts of Congress, yet declined to take notice of inferior executive boards including reports and rulings of the Interstate Commerce Commission, 16 Cyc. 903; 1 Jones' Commentaries on Evid. 678. Some state courts have taken notice of rules and regulations of more important state boards when promulgated and officially published by authority of legislative acts. We are not here concerned with that.

I think it clear that the matter in hand is not of such character that we, without allegation or proof, may or are required to notice. Just as clear is it that we may not do so without violating fundamental principles of pleading in criminal cases requiring the complaint to set forth the offense charged with such particulars as to enable the defendant to understand distinctly the character and identity of the offense complained of. Since we cannot take notice of what the rules and regulations of the state board of health are, and none in substance or by reference having been sufficiently alleged, there is no rule or regulation of the board judicially before us and no basis for the alleged violation of any. While a few courts have gone to the extent—I think wrongly—that substance or essentials of a complaint or information, not mere defect, may be supplied or cured by evidence, but here by the prevailing opinion it in effect is held that it may be supplied or aided by mere speech or orations of counsel; here by the Attorney General with the acquiescence of counsel for the appellant telling us what the rule or regulation was, and putting a purported copy of it in his brief in no wise alleged or shown

by the record. I cannot consent to the aiding of declarations in such manner.

Further, it is not shown that the ruling was made on the ground of the invalidity of some rule or regulation of the board. It is argued in the brief of counsel that the main objection urged in the court below in support of the demurrer was the invalidity of some unalleged or supposed rule or regulation of the board. Though the ruling had been put upon such ground and though the ground was untenable, yet the ruling sustaining the demurrer should be upheld whether some supposed rule or regulation was valid or invalid, because neither the substance nor identity of the rule or regulation was alleged or described. Such is but applying the familiar rule that if a demurrer or objection is sustained for wrong reasons but ought to have been sustained on other grounds or reasons based on and within the demurrer or objection, the ruling nevertheless should be upheld.

So viewing the matter ordinarily precludes the expression of an opinion as to the validity or invalidity of the rule or regulation considered and condemned. However, treating the rule or regulation as being before us, as is done in the prevailing opinion, I cannot concur in its condemnation. The power to promulgate it, and not the reasonableness of it, is alone questioned. I think the board had power to promulgate it. I readily concur in the view that the board may not declare a rule or principle of law not declared by the Legislature, nor promulgate a rule or regulation where the power to do so is not conferred. In addition to the section referred to in the prevailing opinion, the statute, Comp. Laws Utah 1917, § 2707, also provides that, "The board shall have the general supervision of the interests of the health of the citizens of the state," and is given "co-ordinate powers as a board of health with every local board, and shall have authority to make such rules and regulations not contrary to law as may be deemed necessary for the preservation of public health"; by section 2743 power is conferred to control communicable diseases and to enforce necessary

rules and regulations concerning a number of specified contagious and infectious, "and other contagious and infectious," diseases. There also are other provisions defining and relating to nuisances and sanitary conditions, and giving the state board of health supervision and control over local boards in all matters relating to public health, sanitation, and preventing the communication and spreading of contagious and infectious diseases. While the statute does not itself by express language declare it to be unlawful, without sterilization, to use containers or receptacles in serving beverages to the public at public places or establishments, yet under the powers granted, I think the board was authorized to adopt and promulgate reasonable rules and regulations in such respect to prevent the communication and spreading of contagious and infectious diseases, especially the communication or spreading of tuberculosis, trench mouth, and other contagious or infectious diseases some of which we all know frequently and readily are communicated and spread through the use of infected and unsterilized containers and receptacles in serving the public with beverages at public places and establishments. I think the rule here considered is not only lawful and reasonable, but also necessary for the preservation and protection of public health.

EPHRAIM HANSON, J.

I concur in the views expressed by Mr. Justice STRAUP.